IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20101022-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (April 19, 2012) |
| Charles Howard Williams, | ) | |
| | ) | 2012 UT App 119 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 091902668
The Honorable Royal I. Hansen

Attorneys:      C. Danny Frazier, South Jordan, for Appellant
Sim Gill and Joshua N. Graves, Salt Lake City, for Appellee

-----

Before Judges Davis, Thorne, and Roth.

THORNE, Judge:

¶1      Charles Howard Williams was convicted of one count of assault on a pregnant person, *see generally* Utah Code Ann. § 76-5-102(1), (3)(b) (2008), and two counts of domestic violence in the presence of a child, *see generally id.* § 76-5-109.1(2) (Supp. 2011). He appeals, arguing that the victim's posttrial recantation of her testimony and allegations of prosecutorial misconduct entitle him to either an arrest of judgment or a new trial.  We affirm.

¶2      At trial, the victim testified in conformity with her report to police that Williams had threatened her life and kicked her in the leg during a domestic dispute in the presence of the couple's two minor children.  The jury apparently believed this

testimony, as it convicted Williams of three of the four charges against him.[1]  Several days after the trial, the victim executed affidavits stating that Williams did not assault her and that she had lied about the incident in her original police statement and at trial. She further alleged that a prosecutor had threatened her and forced her to testify falsely at trial.

¶3     Based on the victim's posttrial affidavits, Williams filed a motion for either an arrest of judgment or a new trial.  After holding an evidentiary hearing, the district court denied Williams's motion, finding that the victim's posttrial testimony was not credible and that Williams had failed to establish grounds for relief based on newly discovered evidence.  *See generally* Utah Code Ann. § 78B-9-104(1)(e) (Supp. 2011) (allowing a criminal conviction to be vacated following "newly discovered material evidence").  On appeal, Williams argues that he is entitled to an arrest of judgment based on the victim's recantation or, alternatively, to a new trial based on the recantation and prosecutorial misconduct.  However, we are not persuaded that the district court committed any error in denying Williams's motions.

¶4     "[A] judgment may be arrested based on an insufficiency of the evidence or facts as proved in trial or as admitted by the parties."  *State v. Workman*, 806 P.2d 1198, 1202 (Utah Ct. App. 1991), *aff'd*, 852 P.2d 981 (Utah 1993).  The granting of a new trial based on posttrial recantation evidence is appropriate only upon a determination that "the substance of the proffered [recantation] testimony" and the "testimony's probable weight" would "make a different result probable on retrial."  *See State v. Loose*, 2000 UT 11, ¶ 18, 994 P.2d 1237 (internal quotation marks omitted).  The credibility of the recantation evidence is "an essential component" of this determination.  *See State v. Pinder*, 2005 UT 15, ¶ 66, 114 P.3d 551; *see also Loose*, 2000 UT 11, ¶ 18 ("[I]t is appropriate in the context of a new trial motion based on newly discovered evidence to give the trial court the power to consider the testimony's probable weight as part of its determination as to whether that testimony would 'make a different result probable on retrial.'  And part of that weight certainly is the likelihood that a jury would find it credible.").  We will affirm the district court's rejection of both of Williams's theories unless he can establish that the totality of the evidence, including the recantation

---

[1]The jury acquitted Williams on one count of making a terroristic threat.  *See generally* Utah Code Ann. § 76-5-107 & amend. notes (Supp. 2011) (defining a threat of violence, previously called a terroristic threat).

evidence, "viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993); *see also* Utah Code Ann. § 78B-9-104(1)(e)(iv) (stating that new evidence must demonstrate "that no reasonable trier of fact could have found the petitioner guilty of the offense").

¶5    At trial, the victim had testified in considerable detail about an argument with Williams that had escalated until Williams kicked her, leaving scratches or marks on her leg, and eventually threatened to kill her. She testified that the kick occurred while she was on the phone with a nurse and that the nurse indicated that she was calling the police.[2] This testimony substantially conformed to the victim's earlier pretrial statements to police. The victim made no mention of any prosecutorial misconduct at trial and instead stated, "I came here today at my own choice."

¶6    By contrast, in her posttrial testimony, the victim recanted her allegations against Williams and asserted that her leg injury had actually occurred while moving a coffee table. The victim also testified that a process server and a prosecutor had threatened her with jail and the loss of her children if she did not testify. She testified that, on the day of trial, she had indicated to the prosecutor that the charges against Williams were not accurate; that she had collapsed, screaming, outside the courtroom; and that the prosecutor had physically grabbed her and pushed her into the courtroom. The district court also heard posttrial testimony from the prosecutor, who denied the victim's allegations, and a victim's advocate intern, who confirmed the prosecutor's account.

¶7    After considering both the trial testimony and the testimony presented at the posttrial hearing, the district court found that the victim's posttrial testimony "changed dramatically from the time of trial" and "didn't find that [the] new testimony was credible or presented a basis to support" Williams's motion. *See generally Pinder*, 2005 UT 15, ¶ 80 (considering a witness's "blatant about-face" in evaluating the district court's credibility determination). The district court also found that the prosecutor's

---

[2]The nurse did not testify at trial. However, the responding officer did testify that a third party had initiated the call to police, and the officer's testimony implied that this third party was the nurse.

posttrial testimony was credible,[3] that no prosecutorial misconduct had occurred, and that the testimony of a victim's advocate intern who had worked with the victim also "support[ed] the factual basis and . . . regularity of the verdicts." The district court found the intern's testimony particularly "significant" because the intern was "disinterested" and was "the only one that doesn't really have a side to these matters."

¶8 Williams fails to challenge the district court's credibility determinations, and those factual findings are dispositive of his arguments on appeal. Williams is not entitled to a new trial or arrest of judgment based on the victim's posttrial testimony unless that testimony, "viewed with all the other evidence, . . . demonstrates that no reasonable trier of fact could have found the petitioner guilty of the offense." *See* Utah Code Ann. § 78B-9-104(1)(e)(iv) (Supp. 2011). In light of the district court's credibility assessment, we cannot say that this is the case. *See generally Pinder*, 2005 UT 15, ¶ 78 ("As a result of this credibility assessment, the trial court reasoned that the [new testimony] would not have a strong enough impact on a jury to make a different result on retrial probable. We agree."). A reasonable jury could clearly have agreed with the district court that the victim's trial testimony was more credible than her recantation, and Williams has thus not met his burden of demonstrating that the victim's recantation provides a basis for relief under Utah Code section 78B-9-104.[4]

---

[3]We note that the prosecutor's testimony included details of threats of retaliation made by Williams to the victim after the trial. Although the district court did not formally address the effect of these threats on its determination of the victim's posttrial credibility, the reasonable inference that the victim changed her story in response to Williams's threats only bolsters the district court's ultimate credibility determination.

[4]In *State v. Loose*, 2000 UT 11, 994 P.2d 1237, the Utah Supreme Court expressed concern that trial courts not be given too much discretion to determine the credibility of recanting witnesses, at the expense of allowing a jury to make such determinations. *See id.* ¶ 18 (stating that, even in the new trial context, "[w]e proceed with caution where a trial judge's weighing of credibility has the result of keeping otherwise admissible evidence from the jury"). While we share this concern, we also agree with this observation from the concurring opinion in *Loose*:

> Trial judges who have heard both versions of the witnesses'
> testimony, as well as all other trial testimony, are in an

(continued...)

¶9    The district court's unchallenged finding that no prosecutorial misconduct occurred also resolves Williams's argument that such misconduct deprived him of a fair trial. *See generally State v. Wengreen*, 2007 UT App 264, ¶¶ 10, 13, 167 P.3d 516 (discussing prosecutorial misconduct). For these reasons, we affirm both the district court's denial of Williams's motion to arrest judgment or for new trial and Williams's convictions below.

_____

William A. Thorne Jr., Judge

-----

¶10    WE CONCUR:

_____

James Z. Davis, Judge

_____

Stephen L. Roth, Judge

_____

[4](...continued)

excellent position to evaluate whether the supposed recantation is true. If a supposed recantation is obviously false to the trial judge, I question whether justice is served by evaluating whether a jury is likely to be misled by the false testimony. There are valid arguments on both sides of this issue that ought to be considered if and when a case is presented where the trial judge finds the recantation false, but it is also evident that the supposed recantation probably would change the verdict.

*Id.* ¶ 23 (Anderson, Dist. J., concurring).